IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| **Roger C. Yancey,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:21cv1115 (RDA/IDD)** |
| | ) | |
| **Clint D. Davis, et al.,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Roger C. Yancey, a Virginia inmate, filed a pro se complaint pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated while he was detained at the Nottoway Correctional Center ("Nottoway"), a facility within the Virginia Department of Corrections (VDOC). [Dkt. No. 1].[1] He alleged the "air quality and temperature" and that the "extreme heat" at Nottoway posed a serious danger to his health; he was denied adequate medical treatment; and he was subjected to cruel and unusual punishment. On April 26, 2022, the Court screened his complaint, noted deficiencies and granted him leave to file an amended complaint [Dkt. No. 11], which he filed on May 27, 2022. [Dkt. No. 12]. Because plaintiff is a prisoner, his amended complaint must be screened to determine whether it is frivolous, malicious, or fails to state any claims upon which relief may be granted. See 28 U.S.C. § 1915A.[2]

---

[1] Yancy is presently detained at the VDOC's Keen Mountain Correctional Center ("Keen Mountain").

[2] Section 1915A provides:

(a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

**I.**

The amended complaint appears to raise five overlapping claims related to his falling off his top bunk and allegedly injuring his arm on May 21, 2021, and names three Nottoway Correctional Center employees as defendants: Clint D. Davis, Warden; W. Jarret, Assistant Warden; and Michael S. Lewis, Chief of Housing. [Id. at 9-11]. In Claims 1 and 3, plaintiff alleges that the extreme heat at Nottoway on May 21, 2021 caused him to fall and injure his right arm while getting off the top bunk, and that he was not seen by a doctor until several days after he injured his right arm.

The amended complaint admits that plaintiff was taken to the Nottoway medical unit on May 21, 2021, seen by a nurse, and then later taken back to his cell because the doctor was not available. On May 27, 2021, X-rays were taken of plaintiff's arm, he was seen by a doctor, and the doctor told him there was "not a thing wrong with [his] arm" and prescribed Motrin for pain. [Id. at 12]. Plaintiff saw the doctor at Nottoway again on June 7, 2021 and was prescribed medication. [Id. at 8]. Plaintiff alleges the Nottoway doctor was "unwise" and deliberately indifferent to his serious medical need. [Id. at 13]. Plaintiff alleges that he was transferred to Bland Correctional Center ("Bland") on August 13, 2022, and that after he arrived at Bland he was examined and an MRI was ordered. The MRI revealed that plaintiff's "right shoulder was broken up February 1, 2021," and he was approved for surgery that took place on March 6, 2022. [Id. at 14]. Plaintiff alleges that these facts establish that the named defendants were deliberately indifferent to his serious medical need.

Plaintiff's second claim, Claim 2, alleges that the "extreme heat" and poor ventilation in his cell at Nottoway posed "a serious danger to his health," that resulted in the alleged injury to his right arm. [Id. at 15]. Plaintiff alleges the warden, defendant Davis, is responsible for not having

2

his arm "fixed," and that defendant Davis, by not addressing the extreme heat, exposed him to an unreasonable risk of harm and deprived him of a basic human need. He further alleges that because Keen Mountain, where he is currently housed, has air conditioning, Nottoway used the extreme heat as punishment and exposed him to a "serious harm." [Id. at 18].

In Claim 4, plaintiff alleges that defendants Davis, Jarrett, and Lewis were negligent by exposing him to unsafe conditions, specifically "extreme heat." [Id. at 20].[3]

In Claim 5, plaintiff alleges he was denied "equal protection" because he is a transgender inmate and that he suffered for "10 months before [he] got surgery at Bland C.C." [Id. at 21].

## II.

Pursuant to § 1915A, a court must dismiss claims based upon "an indisputably meritless legal theory," or where the "factual contentions are clearly baseless." Clay v. Yates, 809 F. Supp. 417, 427 (E.D. Va. 1992) (citation omitted). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp.2d 641, 642 (E.D. Va. 1998). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. See Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

---

[3] To the extent plaintiff is alleging deliberate indifference in Claim 4, the deficiencies with regard to that element of a constitutional claim are addressed in the discussion Claims 1 and 2. See infra at 4-9.

3

do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957); Jennings v. Emry, 910 F.2d 1434, 1436 (7th Cir. 1990) (a pleading must be presented "with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of the pleader's claims "without untoward effort"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

*A. Claim 1, Deliberate Indifference/Adequate Medical Care*

The Court's April 26, 2022 screening Order noted that plaintiff had failed to allege facts indicating each named defendant had any personal knowledge of or involvement in the alleged violations of plaintiff's constitutional rights for the action to proceed against that defendant. De'Lonta v. Fulmore, 745 F. Supp. 2d 687, 690-91 (E.D. Va. 2010); see also Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). The amended complaint has not cured this deficiency with respect to any of his claims.

Instead, the amended complaint states that the doctor at Nottoway failed to provide him adequate treatment, but it fails to link the actions or inactions of any of the named defendants to his assertion that were deliberately indifferent to his injury. Plaintiff admits he was seen by medical personnel the day of his injury, that he was examined and treated by a doctor at Nottoway for the less than three months he remained at Nottoway until being transferred to Bland, and that the doctor at Nottoway concluded that there was nothing "wrong with" him. Further, the amended complaint states that the surgery approved at Bland that "fixed" him concerned an injury that occurred on February 1, 2021, in which his right shoulder was "broken up." [Dkt. No. 12 at 14].

4

The amended complaint provides conflicting dates as to when the injury "fixed" by the March 6, 2022 surgery occurred.

The glaring conflict regarding the dates aside, plaintiff's disagreement with the Nottoway doctor does not state a claim, see Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985), and reasonable medical treatment does not constitute deliberate indifference simply because it was not successful. See Dulany v. Carnahan, 132 F.3d 1234, 1241-42 (8th Cir. 1997) (a possible alternate course of treatment that "may or may not" have been successful does not constitute deliberate indifference where the prison officials acted reasonably but albeit unsuccessfully, to treat the inmate); see, e.g., Fear v. Diboll Corr. Ctr., 582 F. Supp. 2d. 841, 846 (E.D. Tex. 2008) (even though it took a year to correctly diagnose and treat the prisoner, the doctor was not deliberately indifferent just because the original treatment was not successful). There is nothing unreasonable about the treatment plaintiff received at Nottoway, and plaintiff has not established that the alleged delay resulted in substantial harm. While delay of, or interference with, medical treatment can amount to deliberate indifference, see Formica v. Avlor, 739 F. App'x 745, 755 (4th Cir. 2018); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), there is no Eighth Amendment violation "unless 'the delay results in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" Formica, 739 F. App'x at 755 (citations omitted). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." Id. at 758 (citation omitted).

Plaintiff was transferred from Nottoway to Bland on August 13, 2021 [Dkt. No. 12 at 14], and was seen by doctors that day. On September 8, 2021, the doctor administered a steroid shot on September 8, 2021, which he states alleviated his symptoms for a few days. [Dkt. No. 1-1 at 11]. Plaintiff provides no details as to what treatment was provided, if any, between September 8,

2021 and the surgery performed on March 6, 2022 [id.], which was almost seven months after he arrived at Bland and six months after the steroid shot. The length of delay attributable to the doctor at Nottoway, therefore, is less than three months (May 21, 2021 to August 13, 2021).

Finally, plaintiff, at most, has established nothing more than possibly negligence or malpractice by the Nottoway doctor, who he has not named as a defendant in this matter despite being provided an opportunity to amend his civil action. Gregory v. Prison Health Servs., 247 F. App'x 433, 435 (4th Cir. ) ("claims [of] negligence, medical malpractice, and disagreement with medical treatment... do not support relief under § 1983") (citing Estelle, 429 U.S. at 106; Wright, 766 F.2d at 849); see Jackson v. Lightsey, 775 F.3d 170, 178-179 (4th Cir. 2014) (an "erroneous diagnosis" of a condition "may well represent a deviation from the accepted standard of care, [but] standing alone it is insufficient to clear the 'high bar' of a constitutional claim") (citation omitted).

Even assuming plaintiff could establish deliberate indifference with respect to the medical care he received at Nottoway, the amended complaint does not provide a basis upon which to infer that any of the three of the named defendants were personally involved in the medical treatment provided to plaintiff on May 21, 2021 and through the remainder of his time at Nottoway. The Nottoway doctor examined and treated plaintiff for the alleged injury, and opined that there was "not a thing wrong with" plaintiff, and as administrators at Nottoway, the three named defendants were entitled to rely on the Nottoway doctor's opinion, judgment, and expertise. Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); see, e.g., Peralta v. Dillard, 744 F.3d 1076, 1086-87 (9th Cir. 2014) (en banc) (affirming judgment as a matter of law on deliberate indifference claim for prison administrative officer who relied on medical opinions of doctors who had investigated inmate's complaint); see also Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) ("It is insufficient [when pursuing a theory of supervisory liability to] merely … show deliberate indifference to a serious

medical need on the part of the subordinate physicians."). It is not the function of prison administrators to second guess the good faith treatment decisions of licensed physicians. Shakka, 71 F.3d at 167. Plaintiff has not stated a claim upon which relief can be granted.

   *B. Claim 2, Extreme Heat*

   "It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Farmer v. Brennan, 511 U.S. 825, 832 (1994). While the Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), it does not permit inhumane ones. "The Amendment also imposes duties on these officials, who must provide humane conditions of confinement," Farmer, 511 U.S. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526-527 (1984)), which include "claims of inadequate cooling and ventilation." Chandler v. Crosby, 379 F.3d 1278, 1294 (11th Cir. 2004). A conditions of confinement claim must meet two requirements: (1) the deprivation alleged must be, objectively, "sufficiently serious," and (2) the "prison official must have a sufficiently culpable state of mind." Farmer, 511 U.S. at 834. Even if the plaintiff has met the first element by stating in a conclusory manner that he was exposed to extreme heat, he must still satisfy the second element.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. A prison official's "general knowledge of facts creating a substantial risk of harm is not enough" because he "must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

   In evaluating claims alleging excessive heat, courts consider the summer temperatures,

7

humidity, ventilation, and severity and duration of the exposure. See Chandler, 379 F.3d at 1295. "[A] prisoner's mere discomfort, without more, does not offend the Eighth Amendment." Id. (citation omitted). Here, the allegations regarding air quality and temperature are wholly conclusory. Plaintiff does not provide any specific alleged temperatures for any time during his detention at Nottoway that would support an allegation of "extreme heat."[4] Despite pointing out this failing in the first screening order, plaintiff has not addressed this deficiency. The allegation of extreme heat is the type of threadbare conclusory recitation that Iqbal holds is insufficient.

While plaintiff alleges that there was extreme heat on May 21, 2021, the day he allegedly fell while getting out of his bunk, he does not explain when the unsafe condition came into existence or how the defendants failed to act to handle the alleged unsafe condition. Although he indicates he filed grievances about the alleged extreme heat and ventilation issues after he injured his arm, he alleges nothing about the defendants' knowledge *prior* to the injury he alleges was caused by the extreme heat. If the unsafe condition arose on May 21, 2021, how can the defendants have known of it and prevented it? Plaintiff has not stated a claim upon which relief can be granted.

*C. Claims 3 and 4, Punishment and Negligence*

In Claim 3, plaintiff alleges that the defendants used the "extreme heat" at Nottoway as punishment, and alleges that the fact that the defendants at Nottoway did not get his right arm "fixed" was also intended as punishment. [Id. at 8, 10]. In Claim 4, plaintiff alleges the defendants were negligent in exposing him to an unsafe condition, extreme heat.

---

[4] An online almanac indicates the high temperature in Nottoway, Virginia on May 21, 2021 was 83° F. See World Weather Online, https://www.worldweatheronline.com/ (Search Nottoway, Virginia) (last viewed on July 8, 2022). The same website indicates that the average high temperature for the applicable months in 2021 was: 77° F in May; 85° F in June; 90° F in July; and 88° F in August. A temperature of 83° F, by itself, does not constitute extreme heat.

The Eighth Amendment's prohibition on cruel and unusual punishment "appl[ies] when the conditions of confinement compose the punishment at issue." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). "Allegations that prison conditions 'involve the wanton and unnecessary infliction of pain,' or are 'grossly disproportionate to the severity of the crime,' or are 'without any penological purpose' fall squarely within the ambit of the Eighth Amendment — not the Due Process Clause." Prieto v. Clarke, 780 F.3d 245, 251 (4th Cir. 2015) (citation omitted). Plaintiff, however, has not set forth any allegations of fact that establish or provide a basis to infer that any of the defendants used "extreme heat," as a means of punishment. Plaintiff has also not put forth a basis upon which to infer that the defendants had any involvement in the provision or alleged delay in the treatment of his injury. Claim 3 is conclusory, does not provide any basis upon which to infer that plaintiff's detention at Nottoway was for the purpose of the wanton and unnecessary infliction of pain, does not state a claim upon which relief can be granted.[5]

In Claim 4, plaintiff's allegation of negligence is insufficient to state a constitutional claim. "Deliberate indifference is 'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'" Farmer, 511 U.S. at 835. Claim 4 does not state a claim upon which relief could be granted.

*D. Equal Protection*

In Claim 5, plaintiff alleges that his equal protection rights were violated because he is "transgender." Again, plaintiff has not alleged any facts to support his allegation. To state an equal protection claim, plaintiff claim "must plausibly allege first that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Fauconier v. Clarke, 966 F.3d 265, 277 (4th Cir. 2020).

---

[5] Plaintiff's premise in Claim 3 that the defendants used the alleged extreme heat as a means of punishment borders on frivolous. The defendants have no control over the temperature from day-to-day.

Plaintiff "must also plausibly allege that 'the disparity was not justified under the appropriate level of scrutiny,' which, in the prison context, means that he 'must allege that the disparate treatment was not reasonably related to any legitimate penological interests.'" Id. Plaintiff's conclusory claim fails to state a claim. Accordingly, it is hereby

ORDERED that plaintiff particularize and amend his complaint in a second amended complaint within thirty (30) days of the date of this Order using the enclosed standardized § 1983 complaint form by (i) naming every person he wishes to include as a defendant, (ii) identify each claim he seeks to raise by letter or number, (iii) submitting a short, detailed statement of background facts which describes the specific conduct of each defendant whom he alleges violated his constitutional rights, including the facts giving rise to his complaint, the dates of each incident, the persons involved, the reasons why he believes each defendant is liable to him, and the remedies sought, (iv) and curing the deficiencies noted herein. Plaintiff must reallege all the facts from his original and first amended complaint in this second amended complaint and he must include his civil action number, No. **1:21cv1115 (RDA/IDD)**, on the first page of his amended complaint. Plaintiff is advised that this second amended complaint will serve as the sole complaint in this civil action; and it is further

ORDERED that plaintiff's failure to comply with any part of this Order within thirty (30) days from the entry of this Order, or failure to notify the Court immediately upon being transferred, released, or otherwise relocated, may result in the dismissal of this complaint pursuant to Federal Rule of Civil Procedure 41(b).

The Clerk is directed to send a copy of this Order and a § 1983 form to plaintiff.

Entered this ___13___ day of ___July___ 2022.

Alexandria, Virginia

10

_____ /s/

Rossie D. Alston, Jr.
United States District Judge